621 S.E.2d 659

**In the Matter of Charleston County Magistrate James B. GOSNELL, Jr., Respondent.**

No. 26052.

Supreme Court of South Carolina.

Submitted June 24, 2005.

Decided·Oct. 24, 2005.

Henry B. Richardson, Jr., Disciplinary Counsel, and Robert E. Bogan, Assistant Deputy Attorney General, both of Columbia, for Office of Disciplinary Counsel.

Lionel S. Lofton, of Lofton & Lofton, PC, and Andrew J. Savage, II, of Savage & Savage, PA, both of Charleston, for respondent.

PER CURIAM.

In this judicial disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RJDE, Rule 502, SCACR. In the Agreement, respondent admits misconduct and consents to the imposition of a confidential admonition, public reprimand, or definite suspension not to exceed sixty (60) days pursuant to Rule 7, RJDE, Rule

502, SCACR. The facts as set forth in the Agreement are as follows.

## FACTS

### I.

At approximately 9:15 p.m. on November 8, 2003, Joseph S. Mendelsohn, a Charleston Municipal Court Judge, was arrested for driving under the influence (DUI) in Mount Pleasant. Judge Mendelsohn was also charged with having an open container in his vehicle in violation of South Carolina Code Ann. § 61–6–4020 (Supp.2004).

South Carolina Code Ann. § 22–5–530 (Supp.2004) provides that a person charged with a magistrate or municipal court offense may deposit a sum of money not to exceed the maximum fine with the magistrate, municipal judge, jail, or detention center in lieu of entering into a recognizance. This provision is applicable, however, only in those jurisdictions which adopt the procedure. The City of Charleston and the Charleston County Sheriff's' Department, which operates the Charleston County Detention Facility, use this procedure for DUI cases. As of November 2003, Mount Pleasant had not adopted this procedure.

Judge Mendelsohn was transported to the Mount Pleasant Police Department for paperwork and administration of a Datamaster test. While there, Judge Mendelsohn learned that, under procedures established by the Mount Pleasant Chief Municipal Judge, the bond for DUI was $1,002.00, but that bond could not be posted at that time. Instead, under the established procedures, Judge Mendelsohn would be transferred to the Charleston County Detention Facility where he would remain until a bond hearing could be held the next morning at approximately 8:00 a.m.

Judge Mendelsohn knew the Mount Pleasant procedure was not the same procedure used in Charleston for DUI cases. He questioned the arresting officer, a sergeant, and a lieutenant about the procedure.

Judge Mendelsohn telephoned a Mount Pleasant municipal judge. After the municipal judge discussed the bond policy with the police sergeant, he explained the policy to Judge Mendelsohn.

Thereafter, Judge Mendelsohn telephoned respondent, a Charleston County Magistrate. Respondent, who was familiar with the procedure used in Charleston, asked the lieutenant why Judge Mendelsohn could not be released. After the lieutenant explained Mount Pleasant's bond procedure, respondent remarked that he would go to the bond court and conduct a bond hearing for Judge Mendelsohn that night. Respondent asked that Judge Mendelsohn be brought directly to bond court rather than first being booked into the detention center. The lieutenant refused to bypass the standard booking procedure, stating respondent would be booked like any defendant. The lieutenant then advised the arresting officer that respondent would be at the Charleston County Detention Center to conduct a bond hearing.

Respondent telephoned the Summary Court Director to inquire whether she could arrange for staff to meet him at the detention center to hold a bond hearing. During the conversation, respondent and the Summary Court Director discussed that if a bond hearing was held at other than normal operating hours, respondent would be required to hold a bond hearing for all incarcerated defendants. Respondent elected not to call in staff to hold bond hearings.

Respondent met the arresting officer and Judge Mendelsohn at the detention center. At some point, respondent took possession of the ticket, placed a "bond hearing" stamp on the back, and entered the amount of $1,002.00. When detention center officials expressed concerns over Judge Mendelsohn's release, respondent remarked "this didn't happen until 8:00 a.m.," or words of similar import and effect. Respondent acknowledges it was his intention to facilitate Judge Mendelsohn's release without waiting for the morning bond hearing and to make it appear that Judge Mendelsohn's bond was set at 8:00 a.m. in accordance with Mount Pleasant's bond procedure.

Respondent communicated his setting of the bond to the Mount Pleasant Chief Judge and asked the judge to indicate his approval of the bond. The Mount Pleasant Chief Judge called the Charleston County Detention Center and was advised that officers were in possession of a valid bond set by respondent. The Mount Pleasant Chief Judge told the officers that, since a bond had been set, the bond procedure he

had established did not apply. Judge Mendelsohn was released from the Charleston County Detention Center at approximately 2:30 a.m.

Contrary to the published directives of the Chief Justice, respondent did not undertake to set bonds for the other detainees in the detention center. *See* Chief Justice's Administrative Order of November 28, 2000, revised July 1, 2001.

## II.

On November 6, 2003, respondent presided over a bond reduction hearing. Respondent represents he knew the defendant, the defendant's father, and the defendant's grandfather.

Respondent represents that when the defendant, an African–American, appeared in court for the bond hearing, respondent recalled a statement made to him by a veteran African American sheriff's deputy that "there are four kinds of people in this world—black people, white people, red necks, and n_____." Respondent alleges he repeated this statement to the defendant in an ill-considered effort to encourage him to recognize and change the path he had chosen in life.

## LAW

By his misconduct, respondent agrees he has violated the following Canons of the Code of Judicial Conduct, Rule 501, SCACR: Canon 1 (judge shall uphold integrity of the judiciary); Canon 1(A) (judge should participate in establish, maintaining, and enforcing high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved); Canon 2 (judge shall avoid impropriety and the appearance of impropriety in all activities); Canon 2A (judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); Canon 2B (judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment); Canon 3 (judge shall perform the duties of judicial office impartially and diligently); Canon 3(B)(5) (judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race); Canon 3B(7)

(judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending proceeding); and Canon 3B(8) (judge shall dispose of all judicial matters promptly, efficiently, and fairly). By violating the Code of Judicial Conduct, respondent admits he has also violated the following provisions of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR: Rule 7(a)(1) (it shall be a ground for discipline for a judge to violate the Code of Judicial Conduct) and Rule 7(a)(7) (it shall be a ground for discipline for a judge to willfully violate a valid order issued by a court of this state).

## *CONCLUSION*

We accept the Agreement for Discipline by Consent. Standing alone, respondent's failure to comply with the Chief Justice's Administrative Order would not necessitate imposition of a public reprimand. Combined, however, with respondent's favoritism towards Judge Mendelsohn and his racial remark, the Court deems a public reprimand appropriate. Accordingly, respondent is hereby reprimanded for his misconduct.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.